UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joanne Judge and John Judge,                                  Civ. File No. 05-214 (PAM/JSM)

        Plaintiffs,

v.                                                                    **MEMORANDUM AND ORDER**

Jan Susee, Metes & Bounds,
Mark Susee, and Does I-X,

        Defendants.

_____

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

Defendant Metes & Bounds manages rental properties for property owners. Some of the properties that it manages are covered under 26 U.S.C. § 42, a section of the Internal Revenue Code that provides tax credits to businesses that provide affordable housing. Metes & Bounds hires managers and other employees to take care of the quotidian management of each property. It often hires resident managers, who live on the premises, to field calls from prospective renters, make appointments with prospective renters, show and rent apartments, and collect rent. Plaintiffs Joanne and John Judge were resident managers in charge of an apartment and a townhome complex from September 1999 to March 2004.

**A.      Initial Encounter with Juanita Sealy**

Juanita Sealy became Plaintiffs' supervisor in December 2002. At their first meeting, Sealy allegedly made a comment that Plaintiffs construe as "an ageist threat to discharge"

Plaintiffs if Plaintiffs did not cooperate with Sealy.   (Pls.' Mem. Opp'n. Def.'s Mot. Summ. J. at 2.)  Joanne Judge described the encounter:

> She came in.  She sat down.  She introduced herself, of course.  And she looked me dead in the face . . . and said that if I thought there would be any hard feelings . . . or if her and I weren't going to get along, that she would expect me to turn in my resignation right away.  She proceeded to talk about an elderly woman that had worked for her, and her friends were telling her to fire her, and she said couldn't do that because it would be like firing her mother.

(Friedenson Aff. Ex. 2, Jan. 11, 2006 (Joanne Judge Dep.) at 38.)

In Fall 2003, Joanne Judge complained about the initial meeting to Defendant Mark Susee.  Thereafter, Metes & Bounds President Sharon Schulz telephoned Joanne Judge to discuss her complaint.  During the telephone conversation, Joanne Judge complained that Sealy was providing her with conflicting information about Section 42 housing requirements and reiterated her concerns about age discrimination based on the December 2002 encounter.  **B.**

## Problems with Potential Renters

In early 2004, Sealy received a complaint about Plaintiffs from a Relocation Central agent,[1] who informed Sealy that one of her clients had contacted the apartment complex for approximately two weeks but had not received a response.  The agent was concerned that Plaintiffs had not returned the prospective tenant's telephone calls because the prospective tenant was African American.

John Judge explains the incident as a miscommunication.  He avers that he attempted to telephone the prospective tenant several times, but that he was provided incorrect contact

---

[1] Relocation Central assists individuals in finding housing in various metropolitan areas.

information. (Friedenson Aff. Ex. 7, Jan. 11, 2006 (John Judge Aff.) ¶¶ 2-4.) In addition, he submits that the prospective tenant was given an incorrect telephone number and had been calling a different apartment complex. (Id. ¶ 7.) After receiving the correct information, John Judge spoke with the prospective tenant and showed him an available apartment. However, the individual was not interested. (Id. ¶¶ 4,9.)

In the meantime, Defendants prepared both a warning notice and termination letter relating to Plaintiffs' failure to contact the prospective tenant. However, neither the notice nor the letter was executed because the prospective tenant failed to cooperate with the investigation and Defendants concluded that there was lack of concrete evidence regarding the allegations. Instead, Defendants orally counseled Plaintiffs on January 9, 2004, and instructed Plaintiffs to show all vacant apartments regardless of race.

In February 2004, while discussing vacancy issues, Plaintiffs informed Sealy that the only individual who had contacted them about renting a unit was a Libyan man. Plaintiffs informed Sealy that they dismissed the man from consideration because they did not believe he qualified for Section 42 housing. Specifically, they could not verify income information because the man's wife still resided in Libya. Sealy directed Plaintiffs to contact the prospective tenant to accept an application from him. Plaintiffs contacted the man but informed him that there were no units available. Sealy later contacted the prospective tenant and offered him a townhome unit, but he never completed an application.

Upon learning of these incidents, Sealy suspected that Plaintiffs were discouraging racial minorities from renting at the complexes. Sealy reported her suspicions to Schulz. In

response, Schultz retained an African American and a Caucasian to pose as prospective tenants, replicating a housing search.   On February 24, 2004, John Judge told the African American that there were no apartments available.   The next day, John Judge informed the Caucasian that there were no apartments available but offered to rent him a townhome.

Based on these incidents, Defendants concluded that Plaintiffs were discriminating against racial minorities.   They terminated Plaintiffs on March 1, 2004.   In late March 2004, Mark Susee purportedly blamed Plaintiffs for problems a tenant experienced when applying for an apartment and called Plaintiffs "thieves." (Friedenson Aff. Ex. 18, Jan. 11, 2006 (Tarver Decl.) ¶ 4; <u>id.</u> Ex. 19 (Smith Decl.) ¶ 2.)

On January 28, 2005, Plaintiffs commenced this action, alleging age discrimination, retaliation, and defamation.

**DISCUSSION**

**A.      Standard of Review**

Summary judgment is proper when the evidence viewed in a light most favorable to the nonmoving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.   <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 248 (1986).   Thus, only disputes of facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment.   <u>Id.</u>   The moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   The nonmoving party is entitled to all inferences that may be reasonably

4

drawn from the underlying facts in the record. <u>Meriwether v. Caraustar Packaging Co.</u>, 326 F.3d 990, 992-93 (8th Cir. 2003). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings — it must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256; <u>see also</u> <u>Mayer v. Nextel West Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003) ("Evidence, not contentions, avoids summary judgment.").

Because employment discrimination cases often turn on inferences rather than direct evidence, the Court is particularly deferential to the party opposing summary judgment in employment discrimination cases. <u>Peterson v. Scott County</u>, 406 F.3d 515, 520 (8th Cir. 2005) (citations omitted).

## B.      Age Discrimination

Plaintiffs assert claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") and Minnesota Human Rights Act ("MHRA"). Both statutes prohibit an employer from discriminating against an employee because of the employee's age. <u>See</u> 29 U.S.C. § 623(a)(1); Minn. Stat. § 363A.02. The Eighth Circuit Court of Appeals recently elucidated the analytical framework applied to ADEA claims:

> A plaintiff may meet the ultimate burden of proving intentional discrimination either through evidence "showing a specific link between the alleged discriminatory animus and the challenged decision" and allowing the fact finder to conclude that this animus actually motivated the challenged decision, or through indirect evidence subject to <u>McDonnell Douglas</u> analysis. A plaintiff will preclude summary judgment by presenting sufficient evidence that unlawful discrimination was a motivating factor in the defendant's action even if the defendant has brought forward evidence of additional legitimate motives.

Peterson, 406 F.3d at 521 (internal citations omitted).   Similarly, to establish an age discrimination claim under the MHRA, Plaintiffs may prove discriminatory intent either through direct evidence or through circumstantial evidence in accordance with the tripartite framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 542 (Minn. 2001).

      1.    Direct Evidence

      Plaintiffs claim that the comment Sealy made in December 2002 is direct evidence of discrimination.   Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Lee v. Rheem Mfg. Co., 432 F.3d 849, 853 (8th Cir. 2005) (citations omitted).  More specifically, direct evidence is evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude in such a way that the fact finder may infer that the attitude was probably a motivating factor in the employer's decision.  Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999).   However, not all comments that may reflect a discriminatory animus are sufficiently related to the adverse employment action to support such an inference.   Id. Remarks that are unrelated to the decisional process cannot support a discrimination claim.  Id.; Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1079 (D. Minn. 1998) (Magnuson, J.) ("stray remarks, statements by nondecisionmakers, or statements by decisonmakers unrelated to the decisional process are insufficient to establish a prima facie case").

The parties dispute whether Sealy was involved in the decision to terminate Plaintiffs. Plaintiffs contend that Sealy was intricately involved in the termination decision and note that Sealy signed the termination letter.    Defendants maintain that Sealy played no part in the decision, and there is no evidence to infer that the actual decision makers, Schulz and Susee, had discriminatory animus.    Defendants note that Schulz retained the individuals posing as prospect tenants, and Susee directed Sealy to prepare the termination letter.    Thus, according to Defendants, Sealy executed the termination letter in only an administrative capacity.

For purposes of this Motion, the Court assumes that Sealy was involved in the termination decision.    Nonetheless, her remark in December 2002 is not direct evidence of age discrimination.    It does not demonstrate a specific link between the alleged age-related discriminatory animus and the termination decision.    Indeed, it indicates that Sealy was reluctant to terminate older individuals.    Moreover, Sealy made the remark two years before Plaintiffs were terminated.    Thus, the isolated comment cannot support a finding of age discrimination.    See Kohrt v. MidAm. Energy Corp., 364 F.3d 894, 898 (8th Cir. 2004) (some causal relationship is necessary to show the significance of statements to the ultimate issue of intentional discrimination); Walton, 167 F.3d at 427 (statement made many months before termination too remote to show causation); see also Simmons v. Océ-USA, Inc., 174 F.3d 913, 915-16 (8th Cir. 1999) (racial slurs were not direct evidence of discrimination because they were made two years before termination decision).

2.    Indirect Evidence

Plaintiffs may also survive summary judgment by presenting circumstantial evidence

to support their age discrimination claim. See Lee, 432 F.3d at 854 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). The Court employs a burden-shifting analysis, which requires Plaintiffs to establish a prima facie case of discrimination. Id. If Plaintiffs do so, the burden shifts to Defendants to proffer a legitimate, non-discriminatory explanation for their conduct. Id. If Defendants meet their burden, the presumption of discrimination disappears, and the burden reverts to Plaintiffs to establish that Defendants' proffered reason was a pretext for age discrimination. Id. Thus, Plaintiffs will avoid summary judgment if the evidence as a whole creates (1) a fact issue as to whether Defendants' proferred reason is pretextual and (2) a reasonable inference that age was a determinative factor in the adverse employment decision. Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035-36 (8th Cir. 2005) (citations omitted). Plaintiffs bear the ultimate burden of proving that intentional age discrimination occurred. Peterson, 406 F.3d at 521.

Plaintiffs first must establish a prima facie case of discrimination by showing that: (1) they were members of the protected class; (2) they were qualified for the position they held; (3) despite their qualifications, they were terminated; and (4) some additional evidence exists indicating that age was a factor in the termination. Yates v. Rexton, Inc., 267 F.3d 793, 799 (8th Cir. 2001) (citation omitted).

Defendants contend that Plaintiffs cannot meet two of the prima facie elements. First, they contend that Plaintiffs were not qualified for the resident manager position because they discriminated against racial minorities. The second prong of the prima facie case requires Plaintiffs to show that they were performing their jobs at a level that met their employer's

legitimate expectations.   See Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004)

(summary judgment proper when employee knew she was not performing her duties in a way

that the employer legitimately expected); Richmond v. Bd. of Regents of Univ. of Minn., 957

F.2d 595, 598 (8th Cir. 1992) (employee's prima facie case failed because poor work

performance showed that she was not qualified for her job).   Obviously, a property manager

who unlawfully discriminates against potential tenants will not meet the legitimate

expectations of an employer.   However, the record does not show that Plaintiffs actually

discriminated against racial minorities.   Moreover, it shows that Plaintiffs held the resident

manager positions for several years without any complaints of racial discrimination lodged

against them. Defendants' argument on this point fails.

Second, Defendants submit that Plaintiffs cannot present any evidence indicating that

age was a factor in their termination. As evidence that age animus motivated Defendants'

decision, Plaintiff relies on Sealy's remark.   Even taken as true, the stray remark outside the

decision making process is insufficient to infer discrimination.   See Calder v. TCI Cablevision

of Mo., Inc., 298 F.3d 723, 730 (8th Cir. 2002) (manager's "reference to an applicant as

'grandma,' although patronizing at best, it is the type of 'stray remark' that we have held does

not support a finding of pretext"); Dobesh v. CBS Broad., Inc., No. A03-978, 2004 WL

771725, at *5 (Minn. Ct. App. Apr. 13, 2004) (summary judgment proper when plaintiff's only

evidence of age discrimination is two stray remarks).   Plaintiffs have failed to point to any

other evidence to indicate that their age was a factor in their terminations.   Accordingly, the

Court finds that Plaintiffs fail to sustain their burden to demonstrate that age was a factor in

their termination.

Moreover, Plaintiffs fail to raise a question of material fact as to whether Defendants' proffered reason for the termination decision is a pretext for age discrimination. Defendants received evidence suggesting that Plaintiffs unlawfully discriminated against potential tenants. Specifically, a third party suspected and complained that Plaintiffs were discriminating against African Americans. Plaintiffs admitted that they had not rented to another African man, and Sealy disagreed with their reasons. Finally, Defendants were presented with evidence that Plaintiffs treated an African American differently than a Caucasian. Engaging in unlawful discrimination is a legitimate, non-discriminatory reason for termination.

Although Plaintiffs deny that they discriminated against racial minorities, they present no evidence to contradict the proffered reason. Indeed, whether they truly discriminated against racial minorities is inapposite. Even if Defendants erred in their conclusion, "courts do not review the wisdom or fairness of employers' business judgments, other than to determine whether they involve intentional unlawful discrimination." Lee, 432 F.3d at 854 (quoting Peterson, 406 F.3d at 523); see also Pope v. ESA Servs., 406 F.3d 1001, 1008 (8th Cir. 2005) (issue is not whether the employer was correct, but whether the employer conducted a thorough investigation and made the termination decision reasonably and in good faith). Accordingly, Defendants' Motion on the discrimination claims is granted.

## C.      Retaliation

Plaintiffs allege retaliation claims under the ADEA, the MHRA, and the Minnesota Whistleblower Act. Courts apply the McDonnell Douglas paradigm to analyze retaliation

claims under these statutes.   Pope, 406 F.3d at 1010.   To present a prima facie case of

retaliation, Plaintiffs must show that: (1) they engaged in protected activity, (2) Defendants

subjected them to an adverse employment action, and (3) a causal connection exists between

the protected activity and the adverse employment action.   Id.

      1.     ADEA and MHRA Retaliation

Plaintiffs allege that Defendants retaliated against them after Joanne Judge complained

about Sealy's allegedly ageist comment.   However, Plaintiffs cannot show a causal connection

between Joanne Judge's complaint of age discrimination and their terminations.[2]

Causation requires the employee to show that the employer's "retaliatory motive played

a part in the adverse employment action."   Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d

893, 897 (8th Cir. 2002) (citation omitted).   In this case, the temporal gap between the

complaint in Fall 2003 and the termination in March 2004 contravenes a finding of retaliatory

motive.   Indeed, the Eighth Circuit has held that a two-month interval between the complaint

and termination "dilutes any inference of causation."   Id.; see also Trammel v. Simmons First

Bank of Searcy, 345 F.3d 611, 616 (8th Cir. 2003) ("time interval of more than two months

is too long to support an inference of causation").   Thus, the ADEA and MHRA retaliation

---

[2]  Plaintiffs contend that Defendants took multiple retaliatory actions against Plaintiffs.   In
particular, Plaintiffs claim that Defendants discontinued their caller identification service,
unjustifiably criticized the manner in which Plaintiffs completed housing applications, accused
Plaintiffs of missing meetings, and delayed Plaintiffs from completing applications for
tenants.   However, none of these actions constitute a "tangible change in duties or working
conditions" and therefore do not rise to the level of an adverse employment action.   Manning
v. Metro. Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997).

claims fail as a matter of law.[3]

2.    Whistleblower Retaliation

Plaintiffs rely on two reports to establish their claims under the Minnesota Whistleblower Act.  First, Plaintiffs argue that Joanne Judge engaged in protected activity by reporting that some Metes & Bounds tenants exceeded income eligibility requirements for Section 42 housing.  However, the report cannot constitute protected activity.

The Minnesota Whistleblower Act prohibits retaliation against an employee who, "in good faith, reports a violation or suspected violation of a federal or state law . . . to an employer."  See Minn. Stat. § 181.932.  The Act protects the public from unlawful employer conduct.  However, the "public does not have an interest in a business's internal management problems."  Vonch v. Carlson Cos., 439 N.W.2d 406, 408 (Minn. Ct. App. 1989).  An employer that takes action causing it to lose a government benefit does not break the law.  Nichols v. Metro. Ctr. for Indep. Living, Inc., 50 F.3d 514, 517 (8th Cir. 1995).  Consequently, when a regulation is "not a mandate in the penal or regulatory sense of the word" but merely imposes conditions necessary to receive a federal benefit, an individual does not engage in protected conduct by reporting that an employer is violating the regulation.  Id.

In this case, Plaintiffs reported that some tenants earned too much income to qualify for Section 42 housing.  This purported report would have resulted in Metes & Bounds losing tax credits.  Because the only ramification would be an increase in tax liability, the report does

---

[3]    Moreover, Plaintiffs have provided no evidence to show that Defendants' proffered reason for the terminations was pretextual or that Joanne Judge's complaint was a determinative factor in the termination decision.

not constitute protected activity under the Minnesota Whistleblower Act.

Second, Plaintiffs rely on their complaints that Sealy directed them to accept application fees for apartments that were unavailable. Minnesota law prohibits a landlord from charging an applicant a screening fee when the landlord knows or should have known that no rental unit is available or will be available within a reasonable future time. See Minn. Stat. § 504B.173. Plaintiffs contend that they complained of this practice on two occasions, but the record is unclear exactly when either complaint occurred. There is some evidence that Plaintiffs complained of the practice as late as February 2004. Accordingly, for the purposes of this Motion, the Court assumes that Plaintiffs complained about the practice at that time. Notwithstanding that assumption, Plaintiffs cannot establish a prima facie case.

An employee may prove causation in a whistleblower claim with "circumstantial evidence that justifies an inference of retaliatory motive." Cokley v. City of Otsego, 623 N.W.2d 625, 633 (Minn. Ct. App. 2001) (citation omitted). However, close proximity between the complaint and the termination of employment, without any other circumstantial evidence, fails to raise an issue of material fact regarding causation. Pope, 406 F.3d at 1010 (citations omitted).

The only evidence Plaintiffs offer to prove causation is the temporal proximity between their complaints and their terminations. They have produced no evidence tending to show the reports were a factor in their terminations. Mere speculation is not circumstantial evidence justifying an inference of retaliatory motive. Cokley, 623 N.W.2d at 633. Because Plaintiffs

merely present a theory of causation based on conjecture, summary judgment is appropriate.[4]

**D.      Defamation**

Plaintiffs assert two defamation claims.    First, they claim that Metes & Bounds defamed them in a Minnesota Department of Economic Security and Development proceeding by stating that they were fired for misconduct and that they were dishonest and racially discriminatory.    Second, they claim that Mark Susee defamed them by calling them "thieves." Neither claim survives summary judgment.

    1.      Unemployment Compensation Hearing

Statements made during an unemployment compensation hearing are absolutely privileged.  Jeffers v. Convoy Co., 650 F. Supp. 315, 317 (D. Minn. 1986);  Dorn v. Peterson, 512 N.W.2d 902, 906 (Minn. Ct. App. 1994).    Nonetheless, Plaintiffs attempt to revive their claim by asserting that defamatory statements were also made immediately before the unemployment compensation hearing.    However, Plaintiffs fail to point to any support in the record for that assertion.    The Court need not sift through the record to locate evidence to support Plaintiffs' argument.    See Rodgers v. City of Des Moines, --- F.3d ---, 2006 WL 167899 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments"); Nw. Nat'l Ins.

---

[4] Moreover, even if Plaintiffs had demonstrated all elements of their prima facie case, they fail to show that Defendants' proffered reason for their terminations is a pretext to hide retaliatory motive.

Co. v. Baltes, 15 F.3d 660, 662-63 (7th Cir. 1994) (Easterbrook, J.) ("District judges are not archaeologists."); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs"); Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc., 695 F.2d 839, 846-47 (5th Cir. 1983) ("Judges are not ferrets!").   Because Plaintiffs fail to sustain their burden, the Court grants Defendants summary judgment on the defamation claim set forth in Count IV of the Complaint.

      2.    <u>Thieves</u>

Plaintiffs claim that Susee defamed them by calling them "thieves" and blaming them for delays in the application process.   The only evidence Plaintiffs provide in support of this claim are two unsworn declarations — one submitted by an individual who "upon information and belief" heard the statement, and one replete with hearsay.   A "plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257.   An unsigned declaration is insufficient evidence to create a genuine issue of material fact.   Mason v. Clark, 920 F.2d 493, 495 (8th Cir. 1990).   Instead, a party opposing a summary judgment motion must produce sworn affidavits, "based on personal knowledge" that "show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).   The declarations fail to create a genuine issue of material fact.   Accordingly, the defamation claim alleged in Count III of the Complaint fails as a matter of law.

**CONCLUSION**

Plaintiffs have failed to produce evidence to create a genuine issue of material fact on any of their claims.   For the foregoing reasons, and based upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary

Judgment (Clerk Doc. No. 14) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 24, 2006

s/ Paul A. Magnuson

Paul A. Magnuson

United States District Court Judge